May it please the Court, good afternoon. My name is Maggie McCletchie from the ACLU of Nevada for the Plaintiffs. Here with me in court, I have Mr. Alan Lichtenstein, also for the Plaintiffs. I would like to reserve three minutes for rebuttal, please. As this Court pointed out in Bercy, it would be a cruel twist of history to let the grand jury suprema process, which was designed to protect political dissidents, to become an the heart of what the First Amendment protects. Ms. McCletchie, let me cut to the chase. You were successful, or your clients were successful, I don't know if you were involved in the case at that time, in quashing the first set of subpoenas, not by court action, but because the government withdrew them after you objected. At that time, you filed some affidavits showing that your clients had a personal interest in the blogs that had been put on and that you wanted to have quashed. Now we have two blogs, but what we don't have is any indication that the persons you represent were the blogsters. Now, I could understand if coming forward to claim authorship might indeed cause some incrimination on the part of your clients. But the first time around, you filed some affidavits to show standing that were in the name of Dose 1 through Dose 4, and Mr. Lichtenstein was the signatory of a declaration which we accepted, and which set forth the interests of Dose 1 through 4 in the litigation. So they showed they had an interest under Lujan, and they were entitled to relief, as per your claim, and they were successful, practically. And now my question is, what is your basis of standing in this case? We gave you a chance to do some supplemental briefing, and I don't know if you really zeroed in on that. How do we know that the people who you represent are the people who filed the blogs? Sure. If I may correct the record a little bit, Your Honor, we actually, the first subpoena was actually never withdrawn, and we were not successful as to the first subpoena. They did file a second subpoena, which the Court assumed superseded the second, but it's been our position that effective relief is still available with respect to both subpoenas. And the Court said it is superseded. You want to challenge the Court on that? It's not that I want to challenge the Court. It's that the Court assumed that the case was superseded. No, they treated it as superseded. That's it. It's over. They can't come back. Forget about it. I mean, it's a ridiculous position you're taking there. Well, I think we're going to answer Judge Beyer's question. Yes, I will, Your Honor. With respect to the standing issue and to the second subpoena, the basis for the plaintiff's challenge was that there was a chilling effect to the subpoenas, including the second subpoena. Why do they say it's a chilling effect? We don't know that it's their blogs, that you haven't shown any interest. Because the case, because the case was You're trying this in the newspapers. Because the case was dismissed on the basis of mootness, we did not have the opportunity to further develop the factual record. And we actually never, because of the time Of course you don't. If the case is moot because you don't have standing, you can't develop the factual record. Well, I think with respect, with all due respect, Your Honor, I think with respect to the second subpoena, regardless of whether or not they were the commenters directly targeted by the second subpoena, I think that all the commenters still have standing. Because whenever you, in the First Amendment context, if you want to engage in a protective activity and you are afraid How do we know that your clients are engaging in a protective activity? The question is, who are these folks that are claiming the majesty of the Federal law to protect their rights? If they don't have standing, they can't have an Article III case. Well, I think with respect to the standing issue, with respect to the First Amendment, it's our position that they have standing because of the chilling effect, even if they aren't the target of the two comments targeted by the second subpoena. Your idea is that anybody can bring a lawsuit if they think that there's a chilling effect to what the government's been doing, whether it's they who are chilled or somebody else who's chilled. In other words, a representative, a free-flowing cause of action to vindicate important First Amendment rights. No, that's not my position, Your Honor. My position is that when you want to engage in protected conduct and you have a reasonable fear of government prosecution or government action, and I think here they do, not just because the second subpoena targeted similar commenters because they commented on the same article, but because of the prior existence of the first subpoena, I think they have a reasonable fear that they are going to be Mr. McClatchy, why didn't you file an affidavit just the same as was filed earlier in, for example, in ER-77, which has a declaration, Ms. Lichtenstein, at ER-85, attesting that these people are who they say he is. Well, again, Your Honor, it was our position that they had standing to challenge both subpoenas, and the issue about the, I think the question about whether or not through the authors of the first subpoena, the first subpoena has been superseded. It is gone. It's not in effect. Will you stipulate, counsel for the government, that you will not attempt to enforce the first subpoena? Yes, Your Honor. Gone. Next. Well, I think that with respect to why we didn't get it, it's because this question has, they just formally agreed to withdraw the subpoena today, and of course No, no, but in their brief they said that too. Now, please concentrate on the second. Stop the first. Nothing to say there. Okay. So with respect to the second subpoena, though, I think it's still, there's still a chill on all the commenters to the article when we know that if they continue to comment on these kinds of issues, there's the potential risk of government punishment for their comments. And I think that I don't want to mention the first subpoena again, Your Honor, but if you'll indulge me, I think the fact that they were previously the target of one subpoena makes it reasonable. Here, I think the Nevada Press case, for example, is a reasonable comparison. Is that all you've got to say? That's not all I've got to say. I don't think that this, I don't think that this matter is moot because I think that the second subpoena still, still chills their, their First Amendment rights. I also think that on remand, on remand, we don't even Ms. McCletchie, under your theory, you don't even need clients. You could bring this lawsuit. Mr. Lichtenstein could bring this lawsuit. We wouldn't need any clients. We wouldn't need anybody who's, who's been a plaintiff in the case. No, Your Honor, that's not my position. Don't you think this has a chilling effect? Well, not on me. I'm not an anonymous online commenter. The commenters alleged that they were anonymous online commenters and that they are afraid of speaking out against the government. So I do think that they, they can arguably say that the practice of the overbroad subpoenas issued by the U.S. Attorney's Office has had a chilling effect on them. Well, now, the overbroad is directed to these two people. Is that overbroad? Pardon me? Overbroad. These are two, a subpoena directed to two individuals. Is that overbroad? Well, I do think it's overbroad because I think that the comments at issue are not true threat, true threats. Well, that they're arguable. But to say they're overbroad is a pretty broad statement. But the, the, well, They're very specific. Well, but here I think we have a practice of the U.S. Attorney's Office of issuing subpoenas. Do we? The target, I, I think How do we know that? We know this, we, we know this because this case provided a rare glimpse with the practice of these two subpoenas. And I think one It's a practice, but it happens twice. Well, I think we have a rare glimpse to, to give guidance on the proper scope of the grand jury, of the United States Attorney's Office grand jury McCletchie, there's a place where you can take your policy argument. It's on top of Capitol Hill. It's got a big white dome. It's called Congress, right? Now, if you want a lawsuit, you've got to have a proper plaintiff. The plaintiff has to be a, a person under Lou John that has a particular interest, a particular injury and remedy that can solve that injury. We can't do that with someone who doesn't personify himself in the case, even with, as a Doe. And we've admitted under the former subpoena that Mr. Lichtenstein's affidavit or declaration is perfectly valid to show that the person has an interest. You didn't do that, even though we asked you for supplemental briefing on the issue. What's the matter? Do you have some clients that don't want to even give anonymous declarations? No, Your Honor. We, we, we thought the supplemental briefing was merely on legal issues. And with all due respect, my suggestion would be to remand the factual issues to the district court to analyze the question of whether or not we do have standing on behalf of those two plaintiffs. Whether you have standing is a legal issue, but the factual record has to show that you represent someone who has all those three elements of the Lou John requirements. You don't do that. But the district court, the district court dismissed our case. I understand that of course as moot, as moot. And so here, all we're doing is saying, was the district court correct? And we're, and we're saying pretty much they are. But the district court dismissed for a different reason than the issue that you're raising today, which is to answer. Ms. McClatchy? Yes. Let me ask you a question. In the district court, when the government withdrew its first subpoena, or filed a superseding subpoena, are you suggesting that you didn't have an opportunity to file supplemental affidavits? No, but I, but I am suggesting that in our position, we did have standing to challenge the second subpoena. And at that point, the standing issue was not part of that case. Well, but you did have, you could have. There was a reasonable opportunity for you to file a supplemental declaration. There was, but this issue was never, was certainly never raised by the, neither by the district court, nor the – That's not my question. There was a reasonable opportunity for, for you on behalf of your clients, or Mr. Lickstein on behalf of the clients, to file a supplemental declaration. Is that not right? I, I would agree with that, Your Honor. But I don't think my, I think that this should still be remanded for factual issues. Why, why would we remand it for factual issues if you had that opportunity and you didn't take advantage of it? Because my errors shouldn't be, my clients shouldn't have to pay for my errors. You said what? My clients shouldn't have to pay for my errors. And honestly, this was not – For your clients. This was not an issue at the, this was not an issue at the district court. I personally don't have any knowledge of who our clients were. And we never, we never asked the question of who made those comments. Because to, from our point of view, we do think that the second subpoena, we do have, we did think at that point that we did have standing with respect to the second amendment, the second subpoena. Well, let me pursue that for a moment. How did you get here if you don't have clients? We do, we absolutely have clients. Well, who are they? They're, they're anonymous clients. Given the fact, given the – Well, is that, well, I mean – Mr. Lichtenstein met with the clients and spoke with the clients. He signed – So they're real people that spoke to the – They are absolutely real people as his, as his declaration represents. They are real live people and they are real live people who commented on the article and feel that both subpoenas chill their First Amendment rights. And I think that, I do not think I have standing, I think they have standing. I'm not a commenter on that, on that article. Do you want to save any time for rebuttal? I did want to save, I'm down to two, I'll save the rest of my time for rebuttal. Thank you. Mr. Levitt, how do you respond to the suggestion that Ms. McCletchie has made that we reverse and remand to give her an opportunity, or to give actually the appellants an opportunity to file declarations similar to that which they filed with respect of the first subpoena in this case? Your Honor, I'd respond by saying the district court found that the matter is moot as opposed to a standing issue disposed of this case on mootness grounds. And I do not – I can't envision a scenario based on the district court's prior ruling where that would change despite any supplement to the record. Well, moot in the sense that the comments, or the blog comments, they have, they have actually been delivered by the journal to the U.S. attorney. So the U.S. attorney, I imagine, knows now the e-mail address of the persons who blogged the threatening, or maybe threatening information. Your Honor is correct. Why is that moot? Is the grand jury discharged, or has the government entered into some sort of a binding stipulation that it won't be prosecuted? The latter is not the case, Your Honor. Although, after 14 months, certainly no indictments have been handed down. And – What's the statute of limitations? I don't know, Your Honor. Probably five years, isn't it? That sounds about right. But it's going to be moot in any event because no effective relief can be provided. What about destroying the blogster comments? The problem is, Your Honor, Judge Dawson made it very clear that he's not going to do that. Judge Dawson said, not only are we not going to quash the second superseding narrowly drawn subpoena, but these are actionable threats. Now, whether they are within the ambit of Fogel or not, is not really before this Court. But the fact of the matter is, Judge Dawson said, the government has a compelling interest to investigate any time somebody says, hang the jurors or the prosecutors, not going to live until it celebrates his next birthday. And Judge Dawson considered the totality of the circumstances in the then-constituted record, including prior attacks on court property in a prior tax case in the District of Nevada, where acid was thrown on the vehicles and tires were slashed on vehicles where the court's law clerks parked and where the assistant U.S. attorneys parked. And Judge Dawson said, based on the totality of the circumstances, the government has a compelling interest in investigating those two. So if these two, if the does went from does 1 to 4 to does 1 to 6, and Mike and Provider 1 suddenly stepped forward with two newly minted, belated affidavits and said, we have an interest in the outcome, et cetera, et cetera, that's not going to change Judge Dawson's decision-making calculus, no effect. Do you think anybody would take seriously, let's hang the feds? The feds are the whole Federal establishment, aren't they? No, Your Honor. I'd respectfully disagree with Your Honor's characterization. I'd say that that first subpoena, which swept in and reached threats and non-threats, was overbroad, but that second one was not. Well, what's the threat? And somebody said to us today, I'd like to hang all the feds. Would we feel threatened? I doubt it. Well, it mentioned that it threatened the 12 dummies on the jury, and the second threat threatened the specific prosecutor by name. And in this Court's precedent, as cited in my answering brief, we set forth this Court's case law that says when you start targeting people individually, specifically, it's getting more threat-like. It's not like all the hundreds of other commenters on the Review Journal's website who wrote things like, let's flush the IRS down the toilet. That's not a threat. But when you're getting certainly closer, and Judge Ezra thought that that hanged the dummies on the jury and the feds, Judge Ezra and Judge Dawson, two sitting district court judges, each thought that at least warranted a grand jury investigation just to look at it. Judge Ezra cautioned. Now, this is not a fishing expedition, but that comment is. Mr. Labott. Yes, Judge Pius. You said that the no effective relief can be granted because the district judge said that the grand jury was entitled to this information because he's appeared not to be true threats. But what if we were to disagree with you? Just because a district court said X doesn't mean that he's correct. I believe if Your Honor feels that the district court's ruling was an error, then Your Honors will reverse and send it back. But the question about effective relief, that assumes to some extent that there's the speech was protected by the First Amendment. Why isn't there some form of relief that could be granted, as Judge Baez suggested? Your Honor, I believe some form of relief can be conceived of, A, if B, Your Honor's underlying assumption that these two comments are. Just assume the underlying assumption for a moment. Why couldn't the district court say to the government and to the grand jury, return the statements containing the identity of the blocksters? The district court certainly has that power. And if Your Honor believes that the district court erred in making it very clear that it was not going to do that, then the case will be reversed and remanded. But so then isn't the real problem here, as Judge Baez and Judge Noonan have suggested, which is that they have not shown a specific interest in these particular statements, that they are responsible for these two statements that have been identified as potentially threatening? Your Honor, I believe that the manifest absence of standing would furnish another basis upon which this Court could affirm the district court's opinion. Anything appearing in the record could furnish a perfectly plausible basis. Well, it's not just a plausible basis. We have been told over and over again that the question of standing, which is jurisdictional, is a matter which can be brought up at any time, as it was brought up in the Newdow case for the first time in the Supreme Court of the United States, right? And that if it is brought up by anybody, including sua sponte, it must be determined first because if we don't have jurisdiction, then we simply dismiss the appeal. That is entirely correct, Your Honor. Am I putting words in your mouth? Certainly not. I adopt everything Your Honor just said. I merely point out that this was decided on mootness grounds because we filed a motion to dismiss based upon mootness simply because after the review journal was served with a second, narrow, superseding subpoena, the review journal, two days later, complied with it. And the action certainly appeared to be moot without delving into standing issues. Further underscoring the mootness is the fact that... Well, your idea was mootness because the blogs had been provided to the U.S. Attorney's Office by the journal. That's correct. And therefore, the motion or the action of the today appellant to stop that from happening was too late. The horse was out of the barn. That's correct. That was the decision-making process that I engaged in. And after... But on that issue, as Judge Pius has commented on, maybe the horse isn't out of the barn if the relief that can be granted is to have the government return the information it procured by the grand jury subpoenas, not make any copies, and destroy whatever copies they've already made. That is correct, Your Honor. It is possible to conceive of an alternate form of relief apart from that which the does originally requested, namely, quashing the subpoena that was complied with. However, the mere fact that it's conceivable doesn't make it plausible or reasonable. And on this record, as currently constituted, Judge Dawson made plain that he's not... But you're going to the merits. You're saying these are threatening, so, therefore, his ruling is not an abuse of discretion. That's correct. Well, a little bit different from what Your Honor just characterized. I would say that what Judge Dawson has said correctly is that this is at least enough to warrant a grand jury investigation. Whether or not it's ultimately determined to be constitutionally protected speech, mere political hyperbole, or a true threat, maybe we can revisit that at a later date. But to serve the grand jury's unique function under Brandsburg to determine whether or not a crime has even been committed in the first instance... We're not ruling on the admissibility of the statements in a criminal case. Correct. All right. If Your Honors have no further questions, I would urge the Court to affirm the district court's dispositive ruling. Would you stand still for dismissal of the appeal for lack of standing? Yes, Your Honor, certainly. Just a few additional points. The comments in this case did not come close to true threats. And I think, actually, if you think about the fact that the second subpoena went after comments that were not true threats, that practice allowed them to target that practice of allowing them to target non-threats does give standing to all the commenters, because just like those...  That's the point that was made by Mr. Levin a moment ago. It's one thing to admit the evidence in a trial for threatening a federal officer as being threatening or not, but that's not the issue. Admissibility of the documents is not an issue right now. What's an issue is whether the U.S. Attorney should have possession of these documents for purposes of investigating in a grand jury, which is a secret proceeding, of investigating through their subpoena powers, perhaps subpoenaing if they can find out the people who made these statements, and having them come to the grand jury where they can testify or not. They might not testify, have other people testify, as to whether this was mere hyperbole or maybe as a result of having a couple too many beers. So what's wrong with allowing the grand jury to investigate whether these are true threats or not? I think the problem with that is that you don't have to wait to be prosecuted to assert your First Amendment rights, and I think this goes so far to trying to get at protected speech that they're, in essence, the burden is on the government to prove that speech is not protected by the First Amendment. And I think by presuming the facts that they're supposed to ultimately prove, by saying, well, maybe we can figure out these are true threats later, I think they're doing exactly what the government did in Bercy. But maybe they can't determine whether they're true threats or not without further investigation. It may well be that these blogsters were under the influence of alcohol at the time they were doing this, and when the other witnesses can testify, they don't really mean this. They're very passive persons. They're very peaceful persons. They were just miffed a little bit too high. And then there won't be anything further. But for the purpose of investigation, isn't there a different standard as to what is First Amendment rights and what is not First Amendment rights? Whatever standard applies, I don't think here there is a reasonable basis to believe that they're true threats. First of all, one talks about... But wouldn't you feel a little threatened if somebody said you won't reach your next birthday? They said they'd bid quite a lose, which is Star Trek money, which I think goes to the sort of fantastical nature of it. In addition, these comments were on the blog posts. They weren't even actually directed to either the jurors or the prosecutor. And so they weren't even, for example, sent – it wasn't like a threatening note sent to the jury. These were comments of statements of things that they would like to happen. There was no expression of a threat. There was no expression of an intent to do harm. They were all statements of things that they would like to see happen. And I don't think that – looking at the comments themselves, if you look at Virginia v. Black, there is no – there is no intent to do – there is no expression of an intent to do harm. They're merely statements of a desire that something bad will fall. And if I may add one more thing about the standing argument is that I think – I'm sorry about the mootness argument – is that voluntary cessation does not moot a constitutional challenge. So I think while I understand the position and I don't want to keep laboring the point about the first subpoena, but I do think it's important that where the government is challenged and is accused of doing something unconstitutional just because they voluntarily stopped doing that, that does not moot that challenge. So from my perspective, there is still a potential argument that the first subpoena is live. In addition, with respect to the policy arguments that you earlier mentioned, that I should go to Capitol Hill and I should make my policy arguments there. And we do engage in that kind of lobbying in the state of Nevada, by the way. But we can't make these arguments because these arguments have been made. The U.S. Attorney's Office did not follow the law. So this is not a matter of how do we get the correct law on the books. Under the Code of Federal Regulations, they were not even allowed to issue these grand jury subpoenas because you must have a source other than the media source itself to believe that there was some sort of criminal wrongdoing before you can issue a subpoena to a member of the press. So here I have... Were the Internet blogs press? Well, in the CFR, it says to a member of the press and it was issued to a member of the press. It was to the newspaper.  these blogs are like the press. People do comment on the Internet anonymously all the time. There's all kinds... The Internet is a very, very important forum for modern dissent and for anonymous speech. With respect to the further relief questions that were asked earlier, compliance by a target, the whole basis for the district court's ruling as to mootness was that the review journal had complied with a second subpoena. But we briefed this extensively. And case law, I think, is pretty clear on this point that compliance by the target of a subpoena does not moot... does not moot a challenge because further relief can still be available. As was suggested, the documents can be returned. And case law is crystal clear on this point. And even if it were, for example... Even if no effective relief were available, if, for example, declaratory relief were not available or the documents couldn't be returned, I think, as the Bercy court pointed out in that case, narrow readings of justiciability should not preclude an analysis of important fundamental rights and fundamental challenges. And here, this is a classic instance where we have something that's capable of repetition yet evading review because in the vast majority of circumstances, we never even know if any subpoenas have been issued. Thank you very much. Thank you very much. Thank you. Thank you. This matter will stand submitted. Thank you very much for your arguments. It was very interesting.
judges: Noonan, Paez, Bea, Cjj